## Louisville Railway Company v. Kritzky.

(Decided February 10, 1915.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Third Division).

1. **Evidence—Mercantile Books—When Incompetent.**—In an action to recover damages of a street railway company for injuries received by the plaintiff in attempting to board one of its cars, the driver of an ice cream wagon, who testified as to the accident as a witness for the defendant, cannot be contradicted or his evidence impeached by the books of the ice cream manufactory for which he was driving, which were introduced for the purpose of showing that they contained no orders for ice cream requiring its delivery by the witness at or west of the place of the accident on the morning of its occurrence.

2. **Evidence—Reasons for Exclusion of Such Evidence.**—The introduction of the books in the manner and for the purpose indicated was inadmissible because: (1) They were not shown to have been properly kept; (2) Mercantile books can only be admitted as affirmative evidence and are never admissible to establish a negative proposition.

3. **New Trial—Incompetent Evidence—Books.**—The prejudicial effect resulting to the defendant from the introduction of the books in question being manifest, the refusal of the circuit court to grant it a new trial by reason thereof requires the reversal of the judgment.

FRANK P. STRAUS, HOWARD B. LEE and EUGENE R. ATTKISSON for appellant.

W. PRATT DALE and EDWARDS, OGDEN & PEAK for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

This is an appeal from a judgment entered upon a verdict returned in the Jefferson Circuit Court, Common Please Branch, Third Division, whereby the appellee, William N. Kritzky, was awarded $2,000.00 damages against the appellant, Louisville Railway Company, for personal injuries received, as alleged, by the negligence of its motorman in operating one of its cars.

According to appellee's own testimony, on the morning of the 26th of April, 1912, as he approached the corner of Nineteenth and Chestnut streets in the city of Louisville, on his way to work, he attempted to get upon one of appellant's street cars as it passed him at that point; that after signalling the motorman on the car and it had slowed down, apparently for the purpose of taking on passengers, he took hold of the car to board it and had placed one foot on the lower step thereof when it started with a sudden jerk and threw him into the street and to the ground, by which he was painfully and, to some extent at least, permanently injured.

According to the testimony of the motorman in charge of the car which appellee attempted to board, it was not at the time of the accident being operated for the transportation of passengers, but was being taken to a car barn for repairs; he not being in the company's uniform at the time, but dressed in overalls; that as the car approached Nineteenth Street and the point at which appellee was standing it was going at rate of ten or twelve miles an hour, and did not reduce its speed or slow down for the purpose of taking him on as a passenger; that he did not know that the appellee had attempted to board it or been thrown to the street until the car reached Eighteenth Street.

The only witnesses introduced in appellee's behalf, besides himself, were Thomas A. Brocar and Lee Pfeiffer, both of whom testified that they had been passed by the car and were within 150 or 200 feet of the appellee at the time he was injured; that they saw him standing in the street at the proper place to board the car and also saw him attempt to get on it, in doing which he was thrown to the ground; but neither of them undertook to tell the rate of speed at which the car was then running or whether or not it slowed up in approaching appellee.

Appellant introduced in its behalf, in addition to the motorman, one John Stahle, Jr., who testified that he

was driving a delivery wagon for the ice cream manufactory of George Cuscaden at the time of the accident and was between Nineteenth and Twentieth streets on Chestnut going in the same direction as the car, and was about forty or fifty feet behind it at the time appellee attempted to board it and was thrown to the ground; that the car did not slow up for appellee, but passed him going at a rate of ten or twelve miles an hour.

Appellee introduced in rebuttal, Harry Cuscaden, a son of the proprietor of the ice cream manufactory, who testified that the books of the ice cream manufactory showed all orders received for ice cream on the day of the accident; that they never had to deliver ice cream as early in the morning as the accident happened, 7:30 o'clock, west of Tenth and Broadway, unless there was some special order for it; that the books kept at the ice cream manufactory in the regular course of business showed all orders received for ice cream, and that they showed no order for the delivery of ice cream west of Tenth and Broadway on the morning of the accident. The witness produced and had with him the books referred to. In order that the testimony of this witness may be fully understood we quote the following questions and answers on his examination in chief:

"Q. In the month of April, 1912, were you in charge of the delivery department of the Cuscaden business? A. Yes sir. Q. Did you have in your employ, at that time, a young man by the name of John Stahle, Junior? A. I could not say for sure, he has worked there a number of different times, but I can't say for sure whether he was in the employ at that time, because my father does not keep any records of the names. Q. Well, on the mornings of the 26th and 27th of April, 1912, 1 want you to tell the jury whether there were any orders to be delivered in the west end and at what hours? A. Well, the only way I could tell you exactly, by going to the books. The court: Go to the books. Mr. Attkisson: I object to any books unless he kept them. Q. Were those books kept under your supervision? A. No sir, they were not. The books are simply day journals and there are at least a half a dozen or eight people in the office and every one has a right to enter orders on the day journal. Q. Were all the orders made there in your office? A. Yes sir. The court: The books are kept in the regular course of business of your father? A. Yes sir. The court: I think you can refer to them. To which ruling of the court the de-

fendant by counsel excepts. Mr. Attkisson: There is another reason here—books are never admissible to prove the negative of a proposition. The court: We will see what the books have to say this time. Q. On the 26th and 27th, I want to know, first, if there was any order at all to be delivered to Sixteenth and Chestnut, or on Chestnut between Sixteenth and Seventeenth Street? A. Not on the 27th there was not; no sir, nothing in the neighborhood of Sixteenth and Chestnut on either day. Q. Now, was there any order to be delivered that would carry one of your wagons in the neighborhood of Nineteenth and Chestnut? The court: West of Nineteenth. Q. Yes, west of Nineteenth Street, on either the 26th or 27th of April, by half past seven in the morning, April, 1912? A. No sir, not unless there would have been some special order and the books show there was no special order at that early hour. The wagon never has anything below Tenth and Broadway depot, early morning train orders, at that hour in the morning. Q. If there had been any special order to carry a wagon west of Nineteenth Street, on Chestnut, would your books show it? A Yes sir. Q. Do they show it? A. No sir. Q. Then, there was none? A. No sir."

Although additional grounds for a new trial were filed in the court below by appellant, it asks the reversal of the judgment appealed from upon the single ground that the books of the Cuscaden ice cream manufactory, together with the accompanying testimony of Harry Cuscaden, introduced in rebuttal by appellee on the trial, for the purpose of contradicting appellant's witness, John Stahle, Jr., were incompetent and so prejudicial to its substantial rights, as to entitle it to the new trial moved for in the circuit court.

This contention must prevail. In the first place, it is manifest, both from the books and Harry Cuscaden's testimony, that they were simply day journals and inaccurately kept, because the entries, particularly those of the day on which appellee was injured, were made by six or eight different persons employed in the office of the Cuscaden ice cream manufactory, the handwriting of none of whom was identified, nor was it made to appear that the entries of ice cream orders were made as of the time or days they were received, or that those who made them had personal knowledge of the facts entered or recorded. At most the books were simply memorandum books kept in a haphazard manner, and the entries

had no relation to dealings between litigants, neither party to this action having any connection with the matters therein recorded. For the reasons mentioned, if no other were apparent, the books in question were incompetent as evidence. C., N. O. & T. P. R. Co. v. Smith & Johnson, 155 Ky., 490.

In the second place, mercantile books may be admitted as affirmative evidence but they are not admissible to establish a negative proposition. In Lawhorn v. Carter, etc., 11 Bush, 7, the question of evidence under consideration was passed on. In the opinion it is said:

"The plaintiff when testifying in his own behalf was allowed to state that the books of the firm had been kept by his deceased partner and the clerks of the firm, all of whom were dead, and that they were correctly kept and had been found by the witness in settling the firm business to be correct, and then to state that they contained no entry showing that the defendant had delivered tobacco to the firm, as claimed by him; and so much of the books as related to the defendant's account with the firm was allowed to be read to the jury as evidence, and the account as read is copied into the record. The account on its face shows that it does not contain the original entries of the items appearing on it, and the books were for that reason incompetent. (1 Greenleaf on Evidence, Secs. 117, 118.) But they were inadmissible on other grounds. Mercantile books can only be admitted as affirmative evidence, and are never admissible to establish a negative proposition. It was accordingly held in an action by a laborer against his employer for wages that the time book of the employer, kept in tabular form, in which the days the plaintiff worked were set down, was not admissible in evidence to show that the plaintiff did not work on certain days, by the omission of the defendant to give credit for those days; and the reason given was that it was a book of credit, and not of charges. (Moore v. Potter, 4 Gray, 292.) The books, as well as the testimony of the appellee in reference to them and what they contained or did not contain, were incompetent."

A yet more recent authority in point is furnished by the case of Vandyke v. M. N. O. & C. Packet Co., 24 R. 1283. The action was instituted by a roustabout to recover damages of the owner of a steamboat for negligence in permitting a trap door to remain open, through which the plaintiff fell and sustained serious injury. Charles McKenzie, a witness for the plaintiff, testified that he was

a roustabout on the boat at the time of the accident and that the plaintiff's injuries had been sustained in the manner claimed by him. The defendant was permitted to introduce in evidence a record kept by the shipping clerk to prove that McKenzie's name was not among the list of roustabouts on the boat at the time of the accident. In holding this evidence incompetent the court said:

"The defendant then introduced the captain of the boat, and asked him if McKenzie was on the boat on that trip. He answered that he hardly thought he was. The defendant then introduced the record of the boat kept by the shipping clerk, who was not introduced as a witness, and showed by it that McKenzie's name did not appear in the list of roustabouts kept by him on that trip. The clerk who was introduced was not present when the second clerk took the names, but testified that the latter tried to get them all. He also stated that sometimes these roustabouts took different names. This proof failed to show that the record was correctly kept, and it should not have been admitted. On the contrary, it tended strongly to show that though the second clerk tried to get all the names, he might not have done so. There is another objection to this evidence. Books of this kind are usually admitted only as affirmative evidence, and not to establish a negative proposition. Thus it has been held that the time book of the employer kept in tabular form, in which the days the hands worked were set down, was not admissible in evidence to show that the plaintiff did not work on certain days. (Lawhorn v. Carter, 74 Ky., 7; Moore v. Potter, 4 Gray, 292; Mattocks v. Lyman, 46 Am. Dec., 138.)"

An examination of the authorities relied on by appellee will show that they do not conflict with the principle announced by the authorities *supra.* They relate to controversies or transactions between litigants and have no bearing on a state of case like that here presented.

There can be no doubt of the prejudicial effect of the evidence furnished by the books referred to and the statements of Harry Cuscaden. The purpose of it all was to show that appellant's witness, Stahle, who alone corroborated its motorman as to the manner of appellee's receiving his injuries, did not see the accident and was not in the vicinity when it occurred, and its effect upon the jury was necessarily very damaging to appellant.

So forcibly was it used by appellee's counsel in his argument to the jury, that upon the conclusion of the argument counsel for appellant moved to discharge the jury, filing in support of the motion the affidavit of T. J. Check, one of its employes, setting forth the denunciatory language used by appellee's counsel in referring to the witness Stahle, and the use made by him of the books of the ice cream company in attacking Stahle's credibility.

We think it patent that the introduction of the incompetent evidence in question prevented appellant from obtaining an impartial trial of his case; and because of the error of the circuit court in admitting this evidence and its further error in refusing appellant a new trial by reason thereof, the judgment is reversed and cause remanded with directions to that court to grant it a new trial in conformity to the opinion.